**POST ACUTE MEDICAL, LLC; and Post Acute Medical of New Braunfels, LLC d/b/a Warm Springs Specialty Hospital of New Braunfels, LLC, Appellants**

v.

**Richard MONTGOMERY, Individually and on behalf of The Estate of Constance Montgomery, Deceased, Appellee**

**NO. 03–15–00807–CV, NO. 03–16–00212–CV**

Court of Appeals of Texas, Austin.

Filed: February 10, 2017

Stephen Orsinger, Law Office of Janet McCullar, P.C., Richard C. Fry, Law Offices of Richard Fry, Austin, TX, for Appellee.

Eric W. Hines, Law Offices of Brian J. Judis, Michelle E. Robberson, Cooper & Scully, PC, Dallas, TX, for Appellants.

Before Chief Justice Rose, Justices Goodwin and Bourland

## OPINION

Jeff Rose, Chief Justice

After Constance Montgomery died during her post-operative stay at a rehabilitation hospital, her husband Richard Montgomery filed healthcare-liability claims against Constance's surgeon and the hospital. The district court denied the hospital's motions to dismiss for failure to file an expert report, and the hospital has appealed. In the first of the hospital's two interlocutory appeals, we must decide whether Montgomery's initial, timely filed expert reports were merely deficient, and thus subject to cure, or whether they were so inadequate that they constitute "no report" as to the hospital. If the submitted expert reports were merely deficient, then it was proper for the district court to grant a 30–day extension to Montgomery to cure the deficiencies. If the expert reports were "no report" as to the hospital, however, the trial court had no discretion but to dismiss with prejudice Montgomery's claims against the hospital. Based on our conclusion that the initial expert reports did not implicate the hospital's conduct in any way, and thus constitute "no report" as to the hospital, we will reverse the district court's order and render judgment dismissing with prejudice Montgomery's claims against the hospital. Given our resolution of the hospital's first interlocutory appeal, we will further render judgment dismissing as moot the hospital's second interlocutory appeal challenging the sufficiency of Montgomery's amended expert report.

### Background

Dr. Rolando Saenz performed a colectomy and an ileostomy on Constance Montgomery in March 2013. Constance developed pneumonia after the surgery and was transferred to Warm Springs Specialty Hospital of New Braunfels for respiratory rehabilitation. Constance died while at the rehabilitation hospital. According to the autopsy report submitted by Montgomery's expert, Constance died from asphyxiation caused by an airway obstruction from a foreign body in her trachea and lung.

Montgomery sued Constance's physician for negligence and wrongful death, alleging that the colectomy was unnecessary and that the ileostomy had been performed improperly. Montgomery also sued appellants Post Acute Medical, LLC; and Post Acute Medical of New Braunfels, LLC d/b/a Warm Springs Specialty Hospital of New Braunfels, LLC, (collectively, the hospital), claiming that the foreign body in

Constance's trachea and lung came from a synthetic pad left in Constance's airway during respiratory therapy performed by an unknown hospital employee.

Montgomery filed and served expert reports on the defendants: one report from pathologist Louis A. Levy, M.D.; and the other from general surgeon Vincent A. Caldarola, M.D.[1] The report by Dr. Caldarola was limited to the physician's conduct and concluded that the physician had breached the standard of care by, among other things, recommending and performing an unnecessary surgery. Dr. Levy's report, in addition to briefly describing Constance's medical history, detailed the findings from his postmortem examination of Constance. Specifically, Dr. Levy noted in his report that there were no residual tumors or life-threatening anatomical abnormalities, and that a "coiled light tan foreign body"—identified as "synthetic acellular material with polarizing fibers"— obstructed Constance's trachea and right lung. Dr. Levy concluded that Constance died from asphyxiation caused by "airway obstruction from the foreign body in the trachea and right bronchus."

After receiving these reports, the hospital moved the district court to dismiss with prejudice the claims against the hospital, asserting that because Montgomery's expert reports did not "implicate" the hospital as required by section 74.351 of the Act, they constituted "no report" as to the hospital.[2] The district court disagreed, denying the hospital's motion and granting Montgomery a 30–day extension to cure the report.[3] This order denying the hospital's motion to dismiss is the subject of the hospital's first appeal, our cause number 03–15–00807–CV.

To comply with the district court's grant of 30 days to cure the deficiencies in the initial report, Montgomery filed a second report by Dr. Levy that included additional information regarding Constance's death and the appropriate standard of care.[4] The hospital challenged this second report in

1. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a) (requiring healthcare-liability claimant to file expert report for each defendant physician or health care provider "against whom a liability claim is asserted"); *see generally id.* §§ 74.001–.507 (provisions of Texas "Healthcare Liability Act") (hereinafter, "the Act").

2. *See id.* § 74.351(b) (requiring dismissal with prejudice any claim not supported by required expert report); *Scoresby v. Santillan,* 346 S.W.3d 546, 549, 554 (Tex. 2011) (noting possibility that expert report "utterly devoid of substantive content" may not qualify as expert report under Act); *Ogletree v. Matthews,* 262 S.W.3d 316, 322 (Tex. 2007) (Willett, J., concurring) (noting possibility of expert report "so utterly lacking that, no matter how charitably viewed, it simply cannot be deemed an 'expert report' at all, even a deficient one" and that such a report "merits dismissal just like an absent report").

3. *See* Tex. Civ. Prac. & Rem. Code § 74.351(c) (allowing district court to grant 30–day extension to cure deficient expert report).

4. Specifically, Dr. Levy's second report added his qualifications regarding causal relationship, the applicable standard of care for the hospital, how the hospital breached that standard of care in Constance's case, and his modified conclusion. Generally stated, the report explained that the hospital had breached its standard of care "if the respiratory care personnel allowed the introduction of a synthetic acellular material into the trachea and right main bronchus of [Constance] and then failed to remove the material in a timely manner." After again concluding that Constance's death was from asphyxiation caused by the airway obstruction from the foreign material, Dr. Levy's report concluded that her "death from asphyxia would have been so rapidly fatal that the introduction of the foreign object causing the asphyxia could have only occurred while [Constance] was under the care of" the hospital.

another motion to dismiss, which the district court denied. This denial is the subject of the hospital's second appeal, our cause number 03–16–00212–CV. However, as previously noted, because our resolution of the hospital's first interlocutory appeal renders moot its second appeal challenging the sufficiency of Dr. Levy's amended report, we need only address the hospital's first appeal.

## Discussion

In its first interlocutory appeal, the hospital asserts that it was error for the district court to grant Montgomery a 30–day extension to cure because Montgomery's expert reports failed to implicate the hospital or its staff in any way and, as a result, constituted "no report" as to the hospital. We agree.

■■■ Under the Act, a defendant is entitled to dismissal of a healthcare-liability claim if, within 120 days of filing suit, the defendant is not served with an expert report showing that the claim has merit.[5] The Act has specific requirements for an adequate expert report and mandates that "an objective good faith effort [be made] to comply" with the requirements, but the Act also authorizes the trial court to grant a 30–day extension to cure deficiencies in an otherwise timely filed expert report.[6] The trial court should err on the side of granting the additional time [7] and must grant it if the deficiencies are curable.[8] "[T]he Act thus contemplates that a docu-

ment can be considered an expert report despite its deficiencies, [but] the Act does not suggest that a document utterly devoid of substantive content will qualify as an expert report."[9]

■■■ The Texas Supreme Court has established a "minimal" standard for determining whether a deficient report is curable: "We conclude that a 30–day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated."[10] Montgomery's initial reports, other than being filed within the statutory deadline, fail to meet these minimal requirements. Dr. Caldarola's report, as described above, which is limited to Constance's pre-surgical and surgical history and care, addresses only her surgeon's conduct and standard of care. Dr. Caldarola's report does not discuss Constance's post-surgical care or suggest a cause of death. Dr. Levy's report, after briefly describing Constance's surgical history, addresses Constance's post-surgical care and cause of death as follows:

> After the initial surgery was performed she underwent respiratory arrest and was intubated and a tracheostomy was subsequently placed. Preterminally she developed pneumonia. During trach care the cuff was deflated and she was sus-

---

5.   Tex. Civ. Prac. & Rem. Code § 74.351(b).

6.   *Id.* § 74.351(*l*).

7.   *Samlowski v. Wooten*, 332 S.W.3d 404, 411 (Tex. 2011) (plurality op. of Medina, J., joined by Jefferson, C.J., and Hecht, J.) (" '[T]rial courts should err on the side of granting claimants' extensions to show the merits of their claims.' " (quoting *id.* at 416 (Guzman, J., joined by Lehrmann, J., concurring in the judgment))).

8.   *Id.* at 411 (plurality op. of Medina, J., joined by Jefferson, C.J., and Hecht, J.); *id.* at 416 (Guzman, J., joined by Lehrmann, J., concurring in the judgment).

9.   *Scoresby*, 346 S.W.3d at 549.

10.   *Id.* at 557.

pected of aspirating and subsequently died.

A full autopsy examination was performed involving gross and microscopic examination of her chest, abdomen and cranial organs. External examination showed the sequelae of previous therapeutic interventions including a tracheostomy stoma, a healing midline abdominal incision with some superficial exudate, an ileostomy stoma and various needle puncture wounds, other minor injuries and old healed wounds. A synthetic membrane was sewn into place under the recent abdominal wound, fibrous adhesions were seen in the abdomen and chest cavities and a small amount of fluid was present in each cavity. Examination of the heart, liver, spleen, pancreas, adrenal glands, kidneys and residual hollow organs and brain were free of significant acute abnormalities. The uterus and tubes were not present.

Examination of the respiratory tract revealed markedly heavy lungs with a beefy parenchyma and many small abscesses. Large amounts of pulmonary edema fluid were identified. The trachea and right mainstem bronchus were obstructed by a coiled light tan foreign body. This was photographed in situ, collected and subsequently transferred to Mr. Groff of the New Braunfels Police Department for examination. My microscopic examination of the material showed it to be a piece of synthetic acellular material with polarizing fibers.

My conclusions regarding the cause of death are that no residual tumors were identified. Although there were a number of anatomic abnormalities identified, they were not immediately life threatening and were generally recoverable conditions, but the airway obstruction from the foreign body in the trachea and right main bronchus resulted in death due to asphyxia.

Even construing this report liberally, it is difficult to conclude that Dr. Levy's report expresses an opinion regarding the merits of Montgomery's claims against the hospital. Nothing in Dr. Levy's report implicates the hospital or its conduct. Although it documents the existence of the foreign body that was the cause of Constance's death and notes that foreign body was transferred to the police for examination, the report does not assert any wrongful or negligent conduct by any person or entity, much less by the hospital. The hospital is not even mentioned by name or category of care giver. Relatedly, there is no discussion regarding the circumstances of Constance's death such that we might possibly infer, if we were allowed to,[11] that she died while at the hospital and, further, Dr. Levy's report makes no reference as to how or when the foreign body could have become lodged in her trachea and lungs. In sum, Dr. Levy's report simply does not implicate the hospital or its conduct in connection with Constance's death. Accordingly, we hold that Dr. Levy's report is "no report" as to the hospital.[12]

11. *See id.* at 556 & n.63 (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002) ("[T]he report must include the required information within its four corners.").

12. *See id.* at 557; *see also Rivenes v. Holden*, 257 S.W.3d 332 (Tex. App.–Houston [14th Dist.] 2008, pet. denied) (holding that expert report that did not refer to physician by name or position and that offered no opinions concerning the physician's conduct did not implicate that physician's conduct); *Apodaca v. Russo*, 228 S.W.3d 252, 257 (Tex. App.–Austin 2007, no pet.) (concluding that "if a report fails to address the defendant physician, it constitutes no report as to that defendant, and the trial court may not grant a 30–day extension"); *Garcia v. Marichalar*, 198 S.W.3d 250, 255 (Tex. App.–San Antonio 2006, no pet.) (concluding that report, which did not name defendant doctor or discuss how doctor's

We acknowledge that the supreme court's standard for determining whether an expert report is curable is meant to be "minimal," and that Dr. Levy's report here is more detailed than the example given by the court of "a sheet of paper with the two words, 'expert report,' written on it."[13] However, Dr. Levy's report does not in any way implicate the hospital's conduct here and, as such, does not meet the supreme court's standard for curable expert reports. Because Montgomery's initial reports constitute "no report" as to the hospital, the district court had no discretion but to grant the hospital's motion and dismiss with prejudice Montgomery's claims against the hospital.

## Conclusion

We reverse the district court's order and render judgment dismissing with prejudice Montgomery's claims against the hospital. Based on our resolution of the hospital's first interlocutory appeal, we dismiss as moot the hospital's second interlocutory appeal.

treatment did not meet standard of care, "did not constitute a good-faith effort to comply with the statutory requirements"); *see also Thomas v. Torrez*, 362 S.W.3d 669, 677–79 (Tex. App.–Houston [14th Dist.] 2011, pet. dism'd) (concluding that passing references to physician's assistant did not constitute expert report).

13. *Scoresby*, 346 S.W.3d at 556.