

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00217-CV

_____

BRIAN NORTHCUTT, M.D., Appellant

V.

RONNIE C. STEPHENS AND RICKY STEPHENS, Appellees

On Appeal from the 90th District Court
Young County, Texas
Trial Court No. 34179

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

This case involves a healthcare-liability claim.[1] Appellees Ronnie and Ricky Stephens, the sons of Peggy Celesta Stephens, sued appellee Dr. Brian Northcutt contending that his negligence in treating their mother was a proximate cause of their mother's death. Dr. Northcutt answered the suit. The Stephenses then served an "expert report" by Seth Womack, M.D. Northcutt timely objected to the report and moved to dismiss the case because the report failed to address the element of proximate cause, a required element in a healthcare-liability claim. The Stephenses filed no written response to the objections and motion. After a hearing, the trial court denied the motion. This interlocutory appeal followed. We hold that the report of Dr. Womack was deficient for failing to address the issue of causation; thus, we reverse the order of the trial court denying dismissal of the case and remand the case to the trial court for further proceedings.[2]

---

[1]The Stephenses agree that this case is a healthcare-liability claim.

[2]The Stephenses did not request a 30-day extension in the trial court to cure their report and have not requested one on appeal. However, Dr. Northcutt has requested that, in the event of reversal, we remand the matter to the trial court for consideration of whether a 30-day extension is appropriate under Tex. Civ. Prac. & Rem. Code Ann. Section 74.351(c). *See Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008); *Estorque v. Schafer*, 302 S.W.3d 19, 32 (Tex. App.—Fort Worth 2009, no pet.). While the bar is "minimal" to qualify for the granting of an extension, the granting of an extension is not automatic. *Scoresby v. Santillan*, 346 S.W.3d 546, 549, 554 (Tex. 2011); s*ee Post Acute Med., LLC v. Montgomery*, 514 S.W.3d 889, 894 (Tex. App.—Austin 2017, no pet.); *Laredo Tex. Hosp. Co., L.P. v. Gonzalez*, 363 S.W.3d 255, 259 (Tex. App.—San Antonio 2012, no pet.); *Velandia v. Contreras*, 359 S.W.3d 674, 679 (Tex.

## I.    Background[3]

Ms. Stephens experienced abdominal pain and went to the emergency room at Graham Regional Medical Center two times on March 9, 2018. In the morning visit, she reported abdominal pain from the day before that was "constant, cramping, worse with movement, and better with rest." Three days before this visit, she had undergone stenting of arteries in both legs due to peripheral vascular disease. Dr. Northcutt ordered labs, which revealed an elevated white blood-cell count, and a CT scan, which showed "dilated fluid filled small bowel loops in the right lower quadrant with some adjacent fluid and possible wall thickening."

Dr. Northcutt documented that the "CT findings suggest colitis." But the Stephenses' expert, Dr. Seth Womack, reported that the treating radiologist interpreted the CT as "without colonic wall thickening or pericolonic inflammation." Dr. Northcutt eventually discharged Ms. Stephens with an order to increase fluid intake and with prescriptions for nausea and vomiting. Dr. Northcutt's diagnosis "was gastroenteritis." He instructed her to return "if nausea and vomiting continue[d] without the development of diarrhea." Later that night, Ms. Stephens got out of bed, vomited, became very weak and collapsed. EMS found her on the bedroom floor.

App.—Houston [14th Dist.] 2011, no pet.). We express no opinion on the propriety of an extension here.

[3]The Stephenses and Dr. Northcutt agree that Dr. Northcutt's summary of the facts taken from Dr. Womack's report and the proceedings in the trial court are accurate and we will utilize his recitations.

"She was very pale, diaphoretic, and slow to respond." She had an elevated heart rate and blood-glucose level. EMS took her back to Graham Regional Medical Center where Dr. Northcutt again evaluated her.

Dr. Northcutt documented that she passed out ("a syncopal event") after nausea and vomiting. His diagnosis was syncope and gastroenteritis and he recommended her admission to the hospital. A nurse practitioner admitted Ms. Stephens from the emergency room. The nurse practitioner noted, "Ms. Stephens had diffuse abdominal pain with nausea, vomiting, and dry heaving." The nurse practitioner's physical exam found that "Ms. Stephens'[s] abdomen was soft but diffusely tender," and Ms. Stephens's discomfort prevented the nurse practitioner from feeling the liver.

The next day, Ms. Stephens vomited "dark brown" material, which could be a sign of gastrointestinal bleeding and bowel ischemia. Her hemoglobin had dropped and her white blood cell count had risen. A different doctor (Gerald Mitchell) transferred Ms. Stephens to the emergency room of Huguley Medical Center where Dr. Mehboob Qassam examined her. He found her "alert, ill appearing, and in mild distress." She had an elevated heart rate and "abdominal tenderness with voluntary guarding." He ordered a CT scan, "which showed a medium to high grade small bowel obstruction with a possible transition point at the center of the lower abdomen." Considering Ms. Stephens's atherosclerotic disease and recent stenting, the radiologist who interpreted this CT scan said that an "ischemic etiology should be

4

considered." Dr. Qassam diagnosed her with mesenteric ischemia and small bowel obstruction. He consulted with a surgeon, Dr. Wesley Marquart.

Dr. Marquart took Ms. Stephens for emergency surgery that afternoon. He "found an ischemic segment of bowel associated with a strangulated internal hernia." He also "found other patchy areas of ischemic small bowel globally," that he thought "was from a thromboembolic event from her recent [arterial stenting]." Ms. Stephens "developed septic shock due to small bowel ischemia and died the next day."

The Stephenses' petition alleged that Dr. Northcutt was negligent by:

- not properly diagnosing Ms. Stephens's small bowel obstruction;

- discharging her with the wrong diagnosis;

- failing to properly treat her mechanical bowel obstruction;

- failing to order appropriate tests;

- failing to properly evaluate diagnostic studies and order indicated treatments;

- failing to prescribe appropriate medications; and

- failing to order timely diagnostic studies.

The Stephenses claimed that Dr. Northcutt's conduct was the proximate cause of Ms. Stephens's death. Further, the Stephenses alleged that Dr. Northcutt's acts and omissions "constitute[d] a direct and proximate cause of [Ms. Stephens's] untimely death and the damages" described in the petition.

Dr. Womack's "expert report" is six pages long with his signature on the seventh page.[4] The first page of his report addresses his qualifications and the materials he reviewed. Pages 2 and 3 summarize the pertinent facts he gleaned from the records he reviewed. Pages 4–6 set out his opinions about the case. Dr. Womack identified six areas where Dr. Northcutt breached the standard of care and the reasons why. The asserted breaches of the standard of care were: 1) the failure to consult a surgeon on both emergency room visits; 2) the failure to properly interpret the radiologist's reading of Ms. Stephens's CT scan; 3) the failure to obtain a repeat CT scan on the second emergency room visit; 4) the failure to obtain repeat labs during the second emergency room visit; 5) the failure to obtain and monitor vital signs during both emergency room visits; and 6) the failure to obtain an EKG during both of her emergency room visits. Dr. Womack's report is devoid of any opinions on how any of the alleged departures from the standard of care caused Ms. Stephens's injury or death or how the outcome would have been altered if the standards had been met.

## II.    Standards of Review and Applicable Law

We review a trial court's decision on a motion to dismiss a health care liability claim for an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *CHCA Clear Lake, L.P. v. Stewart*, No. 01-19-00874-

---

[4]Dr. Womack claims to be a physician, board certified in emergency medicine. His qualifications are not at issue here.

CV, 2021 WL 3412461, at *8 (Tex. App.—Houston [1st Dist.] Aug. 5, 2021, no pet.) (mem. op.). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to any guiding rules or legal principles. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). In reviewing the adequacy of an expert report, the expert report must provide a "fair summary" of the expert's opinions on (1) the applicable standard of care, (2) how the care rendered by the defendant physician or health-care provider failed to meet the standard of care, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *see also Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013); *CHCA Clear Lake, L.P.*, 2021 WL 3412461, at *8. A "fair summary" of the expert's opinions means that, at the least, the report must state more than the expert's mere conclusions on the standard of care, breach, and causation; it must instead explain the basis of the expert's opinion to link the conclusions to the facts of the case. *CHCA Clear Lake, L.P.* 2021 WL 3412461, * 8; *see also Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

An expert report qualifies as an "objective good faith effort" to avoid dismissal if it discusses each element of the health care liability claim with sufficient specificity so that it (1) informs the defendant physician or health-care provider of the specific conduct that the plaintiff questions or about which the plaintiff complains and (2) provides a basis for the trial court to conclude that the plaintiff's health care

7

liability claim has merit. *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017). The expert report need not use any particular words, and it may be informal, "but bare conclusions will not suffice." *Scoresby*, 346 S.W.3d at 555–56. In determining whether an expert report constitutes an "objective good faith effort" to address each element, "a trial court may not draw inferences; instead, it must exclusively rely upon the information contained within the four corners of the report." *CHCA Clear Lake, L.P.*, 2021 WL 3412461 at *9 (quoting *Puppala v. Perry*, 564 S.W.3d 190, 197 (Tex. App.—Houston [1st Dist.] 2018, no pet.)). As noted by the San Antonio Court of Appeals,

> The report need not use any particular "magical words" such as "proximate cause," "foreseeability," or "cause in fact." [*Columbia Valley Healthcare Sys. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017).] On the other hand, "merely incanting words does not suffice." *Id.* Also, "merely providing some insight into the plaintiff's claims does not adequately address causation." *Tenet Hosps. Ltd. v. Love*, 347 S.W.3d 743, 755 (Tex. App.—El Paso 2011, no pet.). When a report fails to outline how a suggested action "would have resulted in different care and treatment, or a different outcome" then there is "a broad analytical gap between the alleged breach and the ultimate harm" and thus, the report is "insufficient to establish causation." *Id.*

*Thilo Burzlaff, M.D., P.A., v. Weber*, 582 S.W.3d 314, 325 (Tex. App.—San Antonio 2018, no pet.) (holding conclusory expert report on causation deficient); *see also Zamarripa*, 526 S.W.3d at 460. An expert report that does not address causation is deficient. *Mitchell v. Swanson*, No. 02-19-00460-CV, 2020 WL 6065986, at *4–5 (Tex. App.—Fort Worth Oct. 15, 2020, no pet.) (mem. op.); *Nexion Health at Southwood, Inc.*

*v. Judalet*, No. 12-08-00464-CV, 2009 WL 3019717, at *3 (Tex. App.—Tyler Sept. 23, 2009, no pet.) (mem. op.).

## III.    Analysis

The analysis of this matter is very straightforward. The only expert report proffered by the Stephenses to meet their statutory obligation was Dr. Womack's report. Although Dr. Womack described in significant detail his opinions about Dr. Northcutt's breaches of the standards of care, he never offered any opinions or explanations, using magic words, conclusions or otherwise, about how those breaches caused injury or death to Ms. Stephens. The need to explain the causal connection between breaches of the standards of care and the claimed injury or death is particularly acute in cases where the allegations are that a patient, who had a pre-existing condition, would have experienced a better outcome had earlier diagnosis or treatment been undertaken. *THN Physicians Ass'n v. Tiscareno*, 495 S.W.3d 914, 923 (Tex. App.—El Paso 2016, no pet.) (holding report inadequate because expert merely offered conclusory opinion that failure to recognize and treat a pre-existing infection was substantial cause of harm to the plaintiff); *Jones v. King*, 255 S.W.3d 156, 160 (Tex. App.—San Antonio 2008, pet. denied) (concluding expert report inadequate because it failed to explain how a 48-hour delay in diagnosis caused the patient's alleged injuries); *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.) (holding expert report claiming that patient would have survived but for the delays in diagnosing and treating her was

9

insufficient because it failed to describe "what treatment would have or could have been available, that the patient was a candidate for the unknown treatment, or that the unknown treatment could have or would have been effective").

In this case, the record reviewed by Dr. Womack reflects that three days before Ms. Stephens's first emergency visit to Dr. Northcutt on March 9, she had arterial stents placed in both legs because of atheroslerotic disease. At surgery on March 10, her surgeon found a segment of ischemic bowel associated with a strangulated hernia along with other patchy areas of ischemic small bowel globally, which he believed was from a thromboembolic event from her recent endovascular procedure. Dr. Womack footnoted this finding as follows: "[D]uring endovascular procedures, the internal walls of blood vessels can be disrupted causing plaques/clots to dislodge where they proceed to obstruct a smaller blood vessel, distally; and cause ischemia." It was incumbent on Dr. Womack to explain how Ms. Stephens was injured, or how her death was caused, by the breaches of the standard of care which he outlined in his report, especially since he noted her pre-existing condition that appears to have precipitated her deterioration and contributed to her demise.

The Stephenses argue that we should infer that Dr. Northcutt's alleged negligent conduct was a cause of Ms. Stephens's death. However, we are limited to the four corners of Dr. Womack's report and we cannot infer or make educated guesses about causation. *Methodist Hosp. v. Addison*, 574 S.W.3d 490, 505 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Our review is limited to the four corners of the

10

report, and we cannot make inferences to establish the causal connection" (quoting *Rice v. McLaren*, 554 S.W.3d 195, 201 (Tex. App.—Houston [14th Dist.] 2018, no. pet.)); *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 281 (Tex. App.—Austin 2007, no pet.) (concluding expert report that required reader to infer or make educated guess as to which of two doctors breached standard of care and caused injury was not adequate).

Because Dr. Womack's report was inadequate regarding the element of causation, the trial court abused its discretion in overruling Dr. Northcutt's Motion to Dismiss. We reverse the trial court's order denying Dr. Northcutt's Motion to Dismiss and remand the case to the trial court for further proceedings consistent with this opinion.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: January 6, 2022