**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00046-CV**
_____

**PATRICIA COPLEY & RAVALI TARIGOPULA, Appellants**

**V.**

**KRISTIN GUIDRY, Appellee**

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 23DCCV0196**

**MEMORANDUM OPINION**

This is an accelerated appeal from the trial court's order denying Patricia Copley's and Ravali Tarigopula's motions to dismiss Kristin Guidry pursuant to section 74.351 of the Texas Civil Practice and Remedies Code.[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351; *see also id.* § 51.014(a)(9).[2]

---

[1] We will collectively call Patricia Copley and Ravali Tarigopula "the Appellants" for this appeal, as their issues on appeal are the same.

[2] We cite the current version of the statute, and although the statute was amended in September 2023 after Guidry filed this suit, the amendment does not impact this appeal.

## Background

In July 2021, Kristin Guidry was admitted to The Medical Center of Southeast Texas resulting in an almost six-month stay. Guidry claims that during her stay she was treated by three nurse practitioners and five medical doctors, including the Appellants.[3] Guidry's petition asserts that she was intermittently in ICU and was mostly on a ventilator, immobile, and unable to care for herself. Guidry alleges the conduct of all defendants, including the Appellants, fell below the applicable standard of care and caused her serious bodily injury, by accepting and retaining a resident whose needs they could not meet, by failing to keep appropriate clinical records, by failing to prevent Guidry's pressure ulcer, and by failing to treat Guidry's pressure ulcer appropriately. In her petition, Guidry alleges negligence and gross negligence against all defendants, including the Appellants, and seeks actual and punitive damages, among other things. Attached to Guidry's petition is a report from Dr. Lige B. Rushing, Jr. In the report, Dr. Rushing states the following about the defendants, their standard of care, and their medical treatment of Guidry:

> I have been asked to determine whether or not the care and treatment provided by the Medical Center of Southeast Texas and its staff (hereafter referred to as Defendants) to Kristin Guidry met the applicable standards of care, and, if said care fell below such standards, were there any injuries that occurred as a result of breaches of those standards.

---

[3]Guidry included other medical providers in her petition, but they are not parties to this appeal.

First, I reviewed the Medical Center of Southeast Texas records pertaining to Kristin Guidry to determine the underlying facts, including such things as the patient's subjective and objective condition, the course of care and treatment by the defendants, and their staffs and the treatment outcomes.

Second, I have compared the Defendant's conduct in their care and treatment of Kristin Guidry's illnesses, injuries, and conditions as revealed in the records to the accepted standards of care in order to determine whether they met or fell below those standards of care.

Third, I evaluated whether the breaches in the standards of care resulted in any injury to Kristin Guidry. This is the method employed by physicians who are asked [] to evaluate the quality of another professional caregiver's care and treatment of a patient, whether in the context of a lawsuit or a hospital, or a nursing home, an assisted living care facility or a physician's office. In other words, this method is the generally accepted method for evaluating whether or not a nursing home, long-term care facility, a hospital, or a physician's care and treatment of a patient met or fell below the accepted standards of care. The opinions expressed here are based on my review of the pertinent medical records, my education, training, and experience as a practicing board certified internist, geriatrician, rheumatologist, and my knowledge of the accepted medical and nursing standards of care for the diagnoses, care, and treatment of the illnesses, injuries, and conditions involved in this claim.

[…]

The standard care for the Defendant in this case requires that they provide that level of care and treatment that a reasonable prudent similar facility and staff would provide under the same or similar circumstances.

In order to meet the standards of care the facility must maintain clinical records on each resident in accordance with the accepted professional standards and practices that are complete and accurately documented {Federal OBRA Regulation 483.75 (1) <u>clinical records</u>; 40 TAC 19.1910 <u>clinical records</u> and 19.1911 <u>content of clinical records</u>}. The standard of care requires that the documentation and the clinical records must accurately reflect all assessments, care given, observations,

3

changes in clinical signs, treatments, nursing actions, physician and family notifications, and any notable results of responses to treatment conditions.

In order to meet the standard of care the facility must ensure that (l) a resident receives care, consistent with professional standards of practice, to prevent pressure ulcers and does not develop pressure ulcers unless the individual's clinical condition demonstrates that they were unavoidable, and (2) a resident with pressure ulcers receives necessary treatment and services, consistent with professional standards of practice, to promote healing, prevent infection, and prevent new ulcers from developing. {Federal OBRA Regulation 483.25 quality of care (b) pressure ulcers; see also 40 TAC 19.901 quality of care (3) pressure sore}.

In this case, the Defendant should have developed a pressure ulcer prevention program. This would consist of but not be limited to a regular turning and repositioning schedule with documentation of each and every turn. There should be a clear documentation of the character of the pressure ulcer i.e. size, stage, location, presence or absence of odor, presence or absence of exudate, presence or absence of eschar, the presence or absence of tunneling. While there was some effort to document the character of the pressure ulcer in this case the effort was woefully inadequate. There should have been documentation, in detail regarding response to treatment. I do not find that there was any meaningful, significant or consist[e]nt effort to turn and repositioning Ms. Guidry or to document such action. While she did have an air mattress, she still needed to be turned and repositioned every two hours to prevent pressure ulcer formation and to meet the standard of care. In this case, the pressure ulcer treatment/management was below the standard care and as a result, Kristin Guidry developed a large stage IV pressure ulcer. There was nothing demonstrated in Kristin Guidry's clinical status to demonstrate that her pressure ulcer was unavoidable.

The facility must ensure that residents receive treatment and care in accordance with professional standards of practice, the comprehensive person-centered care plan, and the resident's choices. {Federal OBRA Regulation 483.25 quality of care; see also 40 TAC 19.910 quality of care}.

4

The Defendant in this case knew or should have known that Kristin Guidry [] was at a very high risk for the development of a pressure ulcer. She was at a very high risk because of her immobility and obesity.

The facility must develop a comprehensive care plan for each resident by using among other things the results of the MDS Assessment and other nursing/medical assessments. The care plan must reflect the needs and risks of the resident. The care plan must be kept up-to-date. The effectiveness and appropriateness of the care plan must be evaluated periodically. {Federal OBRA Regulation 483.20 resident assessment comprehensive care plan; 40 TAC 19.802. The care plan in this case failed to adequately plan for pressure ulcer prevention and treatment}.

The standard of care requires that a facility must neither accept nor retain a resident whose needs they cannot meet. {40 TAC 19.1921 general requirements for a nursing facility}. In this case, one of Kristin Guidry's major needs was the prevention of the development of a pressure ulcer. Once Ms. Guidry developed the pressure ulcer and it continued to get worse in spite of the treatment that she received it should have been abundantly clear to the Defendant that they failed to prevent the pressure ulcer in the first place and that their treatment was not effective and that her ulcer was getting progressively worse. What the Defendant should have done, in order to meet the standard of care, is to notify Ms. Guidry's family and physician that they were unable to meet her needs and that . . . a higher level of care be provided. The care provided to Ms. Guidry by the Medical Center of Southeast Texas, and its employees, agents, servants, nurses, doctors and any other persons under their control fell below the accepted standards of care in the following ways:

1. Accepted and retained a resident whose needs they could not meet.
2. Failed to keep appropriate clinical records.
3. Failed to prevent Kristin Guidry's pressure ulcer.
4. Failed to treat Kristin Guidry's pressure ulcer appropriately.

The harm/injury that resulted from these failures was the development of Kristin Guidry's pressure ulcer, the subsequent debridement surgery and the use of a vacuum device. Had it not been for the failures outlined here Kristin Guidry would not have had a pressure ulcer, would not have required debridement, would not have required the use of a

5

vacuum device and would not have had to undergo the pain and suffering associated with these procedures.

The Appellants objected to Dr. Rushing's report and filed motions to dismiss, arguing that the report does not comply with section 74.351 of the Texas Civil Practice and Remedies Code, and that it fails to establish how any alleged breach of the standard of care proximately caused Guidry's injuries. After a hearing, the trial court overruled the Appellants' objections to Guidry's expert report and motion to dismiss and, instead, granted Guidry a thirty-day extension to cure any defects in the report. The Appellants timely filed this interlocutory appeal.

## Issue

In a single issue on appeal, the Appellants argue Guidry's expert report is so deficient that it constitutes no report such that the trial court erred by not dismissing the case.

## Jurisdiction

As jurisdiction is a threshold issue, we must first address this Court's jurisdiction over this interlocutory appeal. Section 51.014 of the Texas Civil Practice and Remedies Code authorizes certain interlocutory appeals. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014. As applicable here,

> [a] person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that: (9) denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351[.]

*Id*. § 51.014(a)(9). Chapter 74 of the Civil Practice and Remedies Code, also known as the Texas Medical Liability Act ("the Act"), requires health care liability claimants to serve an expert report upon each defendant not later than 120 days after that defendant's answer is filed. *Id.* § 74.351(a). "[T]he purpose of the expert report requirement is to weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially meritorious claims." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam) (citing *Am. Transitional Care Ctrs. Of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001)); *see also Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012) ("[Expert report] requirements are meant to identify frivolous claims and reduce the expense and time to dispose of any that are filed."). In accordance with that purpose, the Act provides a mechanism for dismissal of the claimant's suit in the event of an untimely or deficient report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). Specifically, section 74.351(c) provides,

> If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the applicable deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

*Id*. The granting of an extension is generally not subject to appellate review. *See id.* § 51.014(a)(9) (stating that an appeal may not be taken from an order granting an extension under 74.351). "[I]f a deficient report is served[,] and the trial court grants

a thirty day extension, that decision—even if coupled with a denial of a motion to dismiss—is not subject to appellate review." *Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007). If, however, no expert report is served on the defendant, an interlocutory appeal may be had from an order granting an extension under section 74.351. *Badiga v. Lopez*, 274 S.W.3d 681, 684–85 (Tex. 2009). We have held that an expert report could be so deficient as to be considered a "no report." *Blevins v. Bishai*, No. 09-16-00071-CV, 2017 Tex. App. LEXIS 3524, at *27–29 (Tex. App.—Beaumont Mar. 2, 2017, no pet.) (mem. op.) (determining an expert report was so deficient it constituted "no report" because the report "fail[ed] to address any manner in which [the defendant] breached the applicable standard of care or caused [the plaintiff's] alleged injuries"); *see also Quitman Hosp., L.L.C. v. W.S.*, No. 12-24-00246-CV, 2024 Tex. App. LEXIS 6546, at *5 (Tex. App.—Tyler Aug. 29, 2024, no pet.) (mem. op.) (explaining that whether a court of appeals possesses jurisdiction depends on whether the plaintiff's reports are "so deficient as to constitute no report at all, thereby allowing an interlocutory appeal regardless of the trial court's extension").

Here, the trial court granted Guidry a one-time thirty-day extension and denied the motions to dismiss, an order which would not be subject to interlocutory appeal but for the exception noted in *Badiga*. *See Ogletree*, 262 S.W.3d at 321; *see also Badiga*, 274 S.W.3d at 685. As we explain in our analysis below, Guidry's expert report is so deficient it constitutes "no report" with respect to the Appellants, thereby

8

falling within *Badiga's* exception to section 51.014(a)(9), and providing us jurisdiction to consider this interlocutory appeal. *See Blevins*, 2017 Tex. App. LEXIS 3524, at \*27–29; *see also Quitman*, 2024 Tex. App. LEXIS 6546, at \*5.

**Standard of Review**

In health care liability cases, we review a trial court's ruling on a motion to dismiss based on the adequacy of an expert report for an abuse of discretion. *See Abshire*, 563 S.W.3d at 223; *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam); *Palacios*, 46 S.W.3d at 877–78. "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (citation omitted). A trial court's ruling is not an abuse of discretion simply because the appellate court would have ruled differently under the circumstances. *See id*. In reviewing a report's sufficiency under this standard, "we consider only the information contained within the four corners of the report." *Abshire*, 563 S.W.3d at 223 (citing *Palacios*, 46 S.W.3d at 878). In determining whether the report contains the requisite information, we view the entire report rather than isolating specific portions or sections. *See Baty v. Futrell*, 543 S.W.3d 689, 694 (Tex. 2018); *Van Ness*, 461 S.W.3d at 144.

**Analysis**

The Texas Supreme Court has held that when no report is timely served, a trial court is not authorized to grant an extension of time, and if such an extension is

9

granted, interlocutory appeal is available. *See Scoresby v. Santillan*, 346 S.W.3d 546, 555 (Tex. 2011). In *Scoresby,* the Court began by acknowledging that in *Ogletree* it had "rejected the argument that a deficient report is no report," but then recognized that "[t]o stretch the meaning of deficient to include a sheet of paper with the two words, 'expert report,' written on it would mock the Act's requirements." *Id*. at 556. The Court then announced this rule which controls our analysis: "We conclude that a thirty-day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id*. at 557. Neither timeliness nor the expert's qualifications are at issue in this appeal; rather, the question is whether the report implicates the Appellants' conduct. We conclude it does not.

As we have previously noted, "a report served in a medical liability lawsuit does not implicate a particular health care provider's conduct merely because the provider is a defendant in the lawsuit. Although a report served in a medical liability lawsuit need not identify a defendant by name, the report must implicate a defendant's conduct. *Blevins*, 2017 Tex. App. LEXIS 3524, at *25 (citations omitted). "[W]here a defendant is not identified at least in some manner within the 'four corners' of the report, the report is, for that reason alone, deficient as to that defendant because it would require the reader to infer or make an educated guess as to whose actions the expert is complaining." *Bogar v. Esparza*, 257 S.W.3d 354, 364

(Tex. App.—Austin 2008, no pet.) (holding such a report was "no report" for purposes of section 74.351).

Dr. Rushing's report contains several statements defining the standards of care applicable to a "facility," citing the source of the standards, explaining what a "facility" must do to meet those standards, and opining about how the "facility" failed to meet those standards. For example, the report cites "Federal OBRA Regulation[s]" as well as corresponding state regulations found in the Texas Administrative Code as the sources of the standards of care Dr. Rushing claims are applicable for admitting and retaining residents, implementing a baseline care plan for residents, keeping adequate records, and preventing and caring for pressure ulcers. *See* 42 C.F.R. §§ 483.20, 483.25, and 483.75; and 26 Tex. Admin. Code §§ 554.802, 554.901, 554.1910, 554.1911, and 554.1921 (previously 40 Tex. Admin. Code §§ 19.802, 19.90, 19.1910, 19.1911 and 19.1921). We note that the regulations cited by Dr. Rushing refer to "the requirements that an *institution* must meet in order to be licensed as a nursing facility and also to qualify to participate in the Medicaid program." 40 Tex. Admin. Code § 554.1(b) (emphasis added); *see also Id.* § 554.101(43) (defining "facility" as "an institution that provides organized and structured nursing care and service"); 42 C.F.R. §§ 483.1(b) and 483.5 (defining "facility" as "a skilled nursing facility"). Dr. Rushing's report does not indicate that any such regulation sets any standard of care applicable to individual health care professionals such as the Appellants. We conclude the report's statements and

11

opinions regarding the standards of care applicable to "the facility" do not implicate Appellants.

Beyond citing regulations applicable to a "facility" and opining how "the facility" failed to meet those standards, the report also contains two general statements Appellee argues are sufficient to implicate Appellants. First, the report asserts, "The standard care for the Defendant in this case requires that they provide that level of care and treatment that a reasonable prudent similar facility *and staff* would provide under the same or similar circumstances." (emphasis added). Secondly, the report asserts, "The care provided to Ms. Guidry by the Medical Center of Southeast Texas, and its employees, agents, servants, nurses, *doctors* and any other persons under their control fell below the accepted standards of care in the following ways: 1. Accepted and retained a resident whose needs they could not meet. 2. Failed to keep appropriate clinical records. 3. Failed to prevent Kristin Guidry's pressure ulcer. 4. Failed to treat Kristin Guidry's pressure ulcer appropriately." (emphasis added).

Appellee argues these opinions are sufficient because Drs. Copley and Tarigopula are "doctors" and were part of the "staff." According to Appellee, "Dr. Rushing offers his opinions on the standards of care and the failures of the Defendants *collectively* to meet them. Dr. Rushing's opinions regarding the applicable standards of care and the failure to meet them are directed at *all* of the Defendants, including the Appellant doctors." (emphasis added). We have

12

previously held that such collective references are insufficient. *See Blevins*, 2017 Tex. App. LEXIS 3524, at *21. "When a plaintiff sues more than one defendant, the expert report must set forth the standard of care applicable to each defendant and explain the causal relationship between each defendant's individual acts and the injury." *Id*. at *21 (quoting *Estorque v. Schafer*, 302 S.W.3d 19, 29 (Tex. App.—Fort Worth 2009, no pet.)) (internal citations omitted). "An expert report may not assert that multiple defendants are all negligent for failing to meet the standard of care without providing an explanation of how each defendant specifically breached the standard and how that breach caused or contributed to the cause of injury. Collective assertions of negligence against various defendants are inadequate." *Id*. (quoting *Taylor v. Christus Spohn Health Sys. Corp*., 169 S.W.3d 241, 244 (Tex. App.—Corpus Christi 2004, no pet.)) (internal citations omitted).

Dr. Rushing's assertion that the standard of care required "the Defendant" to "provide that level of care and treatment that a reasonable prudent similar facility and staff would provide under the same or similar circumstances" is insufficient to implicate the Appellants in the absence of additional language contained in the four corners of the report to identify the Appellants as members of the facility's staff who were involved in her care. *See Rivenes v. Holden*, 257 S.W.3d 332, 338 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (report's criticism of hospital's staff, without identifying the appellant as a member of the staff, did not implicate the appellant and constituted no report as to the appellant). Dr. Rushing's assertion that the facility

13

"and its… doctors" failed to meet the standards of care, without more, is likewise insufficient to implicate the Appellants. *See Sinha v. Thurston*, 373 S.W.3d 795, 800 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (report asserting the standard of care was not met "by the doctors and medical care providers in this case," or by the hospital and "its staff" failed to implicate doctor and constituted no report as to him). Such statements fail to address the standard of care applicable to each of the Appellants (as distinguished from the facility), the manner in which the Appellants allegedly breached the standard, and how such breaches caused Guidry's alleged injuries. Because Rushing's report fails to implicate the Appellants, it is not merely defective but constitutes no report with respect to the Appellants. *See Blevins*, 2017 Tex. App. Lexis 3524, at *27 (explaining that the report failed to address any manner in which specific doctors breached the applicable standards of care or caused Blevins's alleged injuries); *Laredo*, 363 S.W.3d at 259 (holding an expert report was legally defective and constituted no report when it "omit[ed] the names of the individual defendants and wholly fails to implicate the conduct of any medical defendant"); *see also Post Acute Med., L.L.C. v. Montgomery*, 514 S.W.3d 889, 894 (Tex. App.—Austin 2017, no pet.) (holding an expert report did not meet the supreme court's standard for curable expert reports because it did not implicate the hospital's conduct and constituted "no report" such that "the district court had no discretion but to grant the hospital's motion and dismiss with prejudice [the plaintiff's] claims against the hospital").

14

"A plaintiff is not entitled to a thirty-day extension to cure when 'no report' is timely served." *Blevins*, 2017 Tex. App. LEXIS 3524, at *28 (citing *Ogletree*, 262 S.W.3d at 319–20). Because Guidry failed to timely serve a qualifying report as to the Appellants, the court erred by failing to dismiss Guidry's claims against the Appellants. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (trial court "shall" grant a motion to dismiss when a plaintiff fails to serve an expert report); *Blevins*, 2017 Tex. App. LEXIS 3524, at *28-29 ("Because we find the [expert report] was 'no report'… the trial court erred in granting [the plaintiff] a thirty-day extension of time."); *Hebner v. Reddy*, 498 S.W.3d 37, 40 (Tex. 2016) (explaining that if a claimant fails to timely serve a qualifying expert report, the trial court shall dismiss the claim with prejudice); *Quitman*, 2024 Tex. App. LEXIS 6546, at *5.

We sustain the Appellants' sole issue on appeal, reverse the trial court's order denying the Appellants' motions to dismiss, and render judgment for the Appellants.

REVERSED AND RENDERED.

KENT CHAMBERS
Justice

Submitted on December 27, 2024
Opinion Delivered April 10, 2025

Before Golemon, C.J., Johnson and Chambers, JJ.

15